UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

CASE NO.: 19-22593-CIV-UNGARO/O'SULLIVAN

THOMAS E. STEWART,

      Plaintiff,

vs.

VMSB, LLC,

      Defendant.

_____/

## DEFENDANT, VMSB, LLC'S MOTION FOR SANCTIONS

      Defendant, VMSB, LLC ("Defendant"), by and through its undersigned counsel and pursuant to Fed. R. Civ. P. 41(b) and this Court's inherent authority, files its Motion for Sanctions against Plaintiff, Thomas E. Stewart ("Plaintiff"), and, in support thereof, states:

### I.      INTRODUCTION

      It is an unfortunate reality that frivolous claims find their way into the courts, wasting judicial resources, harassing litigants, and damaging the credibility of legitimate lawsuits. This is one of those claims.

      Plaintiff is the former Executive Chef at a restaurant, Gianni's at The Villa (the "Restaurant"), operated by Defendant. Plaintiff was terminated on January 14, 2019 as a result of myriad performance and attitude issues; Defendant had been endeavoring to replace Plaintiff for well over a year. Two days after he was terminated, Plaintiff sent emails to Defendant's Manager, Salem Mounayyer ("Mounayyer"), threatening Defendant and Mounayyer. Plaintiff also threatened to "embarrass" the Nakash family, some of whom are principals of related entities, if Defendant did not pay him a generous severance package and allow him to resign. In those emails, Plaintiff refers to the alleged removal of time from employees' time cards, although he admits in those emails that he had not previously raised that feigned issue to Mounayyer, who terminated him.

      Defendant did not cave in response to Plaintiff's baseless threats; five months later, Plaintiff filed the instant lawsuit. Plaintiff falsely claims that he was terminated in retaliation for

complaining about alleged Fair Labor Standards Act ("FLSA") violations, to wit, that Defendant deducted a half hour from each kitchen staff employee's time each day for a meal break even if the employee clocked out for that meal break or was unable to take a meal break during the subject shift.   The evidence obtained during discovery is clear: <u>that alleged policy never existed</u>. Nevertheless, Plaintiff continues to pursue his demonstrably frivolous claim against Defendant, including presenting perjured deposition testimony regarding the fictitious FLSA violations in attempted support of that claim.

In pursuit of his imagined claim, Plaintiff also perjured himself in an effort to inflate his claimed damages, including regarding: 1) employment that he obtained less than three months after the termination of his employment with Defendant, Plaintiff falsely testifying that he was laid off (he actually resigned) and that his salary was approximately half of what it actually was; and

███████████████████████████████████████████████████

█████████████████████████████████

In light of all of the foregoing, the Court should sanction Plaintiff pursuant to the Court's inherent authority to sanction litigants for bad faith litigation conduct as well as pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, including dismissing Plaintiff's claim with prejudice and awarding Defendant attorneys' fees.  Enough is enough. The Court should not permit Plaintiff to continue with this pasquinade of a legitimate claim any longer.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

1.      Defendant operates the Restaurant, located in Miami Beach.  Defendant took over the Restaurant in 2015 from another entity that had been operating the Restaurant under Defendant's ownership.  In doing so, Defendant inherited Plaintiff, the Executive Chef, as one of the employees of the Restaurant.

2.      On January 14, 2019, Defendant terminated Plaintiff's employment.  As testified by multiple witnesses, including a former VMSB employee, and evidenced by Defendant's document production, due to performance and attitude issues VMSB had been looking for a replacement for Plaintiff going back to at least 2017.  *See* transcript of the February 10, 2020 deposition of Salem Mounayyer ["Mounayyer Depo"], attached as **Exhibit A**, p. 46, ll. 5-25, p. 47, ll. 8-12, p. 57, l. 4-p. 58, l. 1, p. 62, l. 7-p. 63, l. 20, p. 83, ll. 2-10, p. 84, l. 9-p. 85, l. 14; *see also* transcript of the May 2, 2020 deposition of Chauncey Copeland ["Copeland Depo"], attached as **Exhibit B**, p. 13, l. 21-p. 14, l. 24, p. 17, l. 16-p. 18, l. 9, p. 24, ll. 1-17, p. 34, l. 23-p. 35, l. 1,

p. 35, ll. 7-22, p. 61, l. 18-p. 62, l. 14; email correspondence bates stamped VMSB-000661-VMSB-000675 and VMSB-000695-VMSB-000709 ("Headhunter Emails"), attached as **Composite Exhibit C**.

3. Two days later, Plaintiff began sending threatening emails to Defendant's Manager, Mounayyer. *See* January 16, 2019 email correspondence, bates stamped VMSB-000083-VMSB-000087 ("Post-Termination Threats"), attached as **Composite Exhibit D**. These emails began on the evening of January 16, 2019, Plaintiff demanding that Mounayyer call him and threating that he "**would hate to embarrass the Nak[]sh family but i will if you don[']t call me**." *Id.* at VMSB-000083 (emphasis added). In response to Mounayyer's request to limit their communications to email, Plaintiff responded "I want a severance pay [of] [$]24k [of] 4 months['] pay" and "I also want to resign and not be fired." *Id.* at VMSB-000084.

4. Plaintiff sent another email to Mouanyyer a minute later (without any response from Mounayyer) stating "You will be served papers soon." *Id.* Ten minutes later, Plaintiff sent another unsolicited email to Mouanyyer, stating "You're responsible when the news media gets a hold of all the pictures and emails I have." *Id.* at VMSB-000083. Plaintiff continued his threats against Defendant and the Nakash family, stating that "**[t]he Nakash family will already have a black eye. Haven't even brought up the fact that you take time out of employees['] time cards** . . . ." *Id.* at VMSB-000084-VMSB-000085 (emphasis added).

5. Plaintiff followed through on the Post-Termination Threats, filing his Complaint against Defendant on June 21, 2019. [D.E. #1]. In his bare-bones Complaint, Plaintiff vaguely alleges that he was terminated in retaliation for complaining that Defendant was "unlawfully manipulating the Kitchen Staff's time records to avoid paying overtime." [D.E. #1, ¶11].

6. On January 17, 2020, Defendant conducted Plaintiff's deposition. *See* transcript of the January 17, 2020 deposition of Plaintiff ["Plaintiff Depo"], attached as **Exhibit E**. During his deposition, Plaintiff specified that the claimed overtime violations upon which his Complaint is based were the result of an alleged policy of Defendant whereby it manually deducted a half hour for a meal break each day for each employee who worked at least a six-hour shift even if the employee: 1) clocked out for the subject meal break; or 2) did not take a meal break during that shift (the "Alleged Policy"). *Id.* at p. 109, l. 19-p. 110, l. 24, p. 113, ll. 18-24, p. 122, ll. 6-14, p. 128, l. 10-p. 129, l. 1.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

7.      As established by the time records for the kitchen staff produced by Defendant to Plaintiff, the Alleged Policy to which Plaintiff testified under oath never existed.  *See* time records, bates stamped  VMSB-000153-VMSB-000208  and  VMSB-000229-VMSB-000316  ("Time Records"), attached as **Composite Exhibit F**.  The Time Records are clear that:

- although Defendant's policy required them to do so (to accurately track meal breaks), kitchen staff rarely clocked in and out for meal breaks, a failure by Plaintiff as their supervisor;

- as it was not Defendant's policy to do so, when an employee clocked out for a meal break a deduction generally was not applied, although occasionally Plaintiff (due to his own carelessness) inadvertently applied a meal break deduction (sometimes even two) when an employee clocked out for a break; and

- no deduction was to be applied if a kitchen staff employee was unable to take a break during any particular shift, as the Time Records are replete with instances of a kitchen staff employee working an entire shift (often in part or entirely comprised of overtime) and not receiving a deduction for a meal break.

*Id.* at VMSB-000153, VMSB-000156, VMSB-000159, VMSB-000160, VMSB-000162, VMSB-000168, VMSB-000172, VMSB-000174, VMSB-000183, VMSB-000185, VMSB-000186, VMSB-000188-VMSB-000190, VMSB-000193, VMSB-000196, VMSB-000201, VMSB-000205, VMSB-000237, VMSB-000244, VMSB-000246, VMSB-000250, VMSB-000254-VMSB-000256, VMSB-000258, VMSB-000262, VMSB-000263, VMSB-000266, VMSB-000267, VMSB-000278, VMSB-000280-VMSB-000286, VMSB-000290, VMSB-000291, VMSB-000294, VMSB-000299, VMSB-000302-VMSB-000304, VMSB-000306, VMSB-000307, VMSB-000311, VMSB-000314.

8.      Records identifying all edits made to kitchen staff's time before the Time Records were finalized establish that both the Restaurant's then General Manager, Chauncey Copeland ("Copeland," who conducted payroll for the kitchen staff prior to Plaintiff), and Plaintiff (who conducted payroll for his kitchen staff for approximately the last three months of his employment) adjusted employees' time to remove deductions for meal breaks when the employee did not take a meal break during the subject shift.  *See* "TimeCard Adjustments by Employee" records, bates stamped VMSB-000333-VMSB-000429, attached hereto as **Exhibit G** (the "Edit Records"); *see also* transcript of the May 21, 2020 deposition of Crystal Lopez ["Lopez Depo"], attached as

**Exhibit H**, p. 69, l. 20-p. 72, l. 4, 72, ll. 18-23.  Plaintiff's claim that Defendant mandated a meal break deduction when an employee did not take a meal break is **demonstrably false**.

9.      The Edit Records also evidence that Plaintiff frequently added a meal break deduction to many (but not all) days due to the employee's failure to clock out for that break, as did Copeland. *Id.*  Quite clearly, and as testified by Mounayyer, Copeland, Daniel Tamir ("Tamir," Defendant's Director of Finance), and Crystal Lopez ("Lopez," Defendant's Human Resources Manager), there was no policy requiring that Copeland or Plaintiff add a meal break deduction to every shift. *See* Mounayyer Depo at p. 48, l. 14-p. 49, l. 15, p. 51, ll. 16-21, p. 52, ll. 3-7, p. 54, ll. 5-10, p. 106, l. 15-p. 107, l. 4, p. 107, l. 15-p. 108, l. 6, p. 112, l. 14-p. 113, l. 17; *see also* Copeland Depo at p. 43, l. 13-p. 44, l. 12, p. 55, ll. 11-23, p. 56, ll. 11-12; transcript of the April 29, 2020 deposition of Daniel Tamir ["Tamir Depo"], attached as **Exhibit I**, p. 89, ll. 7-14, p. 91, ll. 12-16; Lopez Depo at p. 72, l. 24-p. 74, l. 8, p. 74, ll. 11-16, p. 76, ll. 16-20.

10.     During his deposition, Plaintiff identified numerous former and current kitchen staff employees of Defendant who he claims have knowledge regarding the Alleged Policy, yet he has failed to obtain the testimony from even one witness to support his baseless claims. *See* Plaintiff Depo at p. 134, ll. 13-18. Two of those individuals, Andy Garcia ("Garcia," Line Cook) and Antrell Brown ("Brown," Line Cook), have been deposed in this case and each flatly denied that the Alleged Policy ever existed or any knowledge of any complaints about the Alleged Policy. *See* transcript of the May 12, 2020 deposition of Andy Garcia ["Garcia Depo"], attached as **Exhibit J**, p. 26, ll. 6-18, p. 27, ll. 8-18, p. 28, ll. 4-10, p. 28, ll. 16-18, p. 33, ll. 13-15, p. 34, ll. 19-20, p. 50, l. 22-p. 51, l. 7, p. 51, ll. 21-24, p. 59, ll. 17-18; *see also* transcript of the May 21, 2020 deposition of Antrell Brown ["Brown Depo"], attached as **Exhibit K**, p. 6, ll. 1-5, p. 8, ll. 19-21, p. 11, l. 19-p. 12, l. 12, p. 12, ll. 17-20, p. 15, l. 11-p. 16, l. 4.  Defendant obtained an Affidavit from another of those individuals, Alejandro Bravo ("Bravo," Line Cook), who also denied any knowledge about the Alleged Policy or any complaints about same.  *See* October 18, 2019 Affidavit of Alejandro Bravo, bates stamped VMSB-000055-VMSB-000056, attached as **Exhibit L**.

11.     In light of the foregoing, it is clear that Plaintiff's claim is not only a baseless claim but a completely frivolous one.

12.     During his deposition, Plaintiff testified that less than three months after the termination of his employment with Defendant he obtained employment as a Sous Chef at Miami

Shores Golf Club ("MSGC"). Plaintiff testified, under penalty of perjury, that his salary at MSGC was $38,000.00 and, more importantly, that he was laid off after only three weeks. *See* Plaintiff Depo at p. 283, l. 24-p. 285, l. 6. MSGC's records, however, reveal that Plaintiff was not terminated, he resigned: Plaintiff "walked in to [sic] his supervisors [sic] office and said this is [not] for me, thank you for the opportunity[.] I'm out and good luck." *See* "Employee Change/Termination Form" and May 16, 2019 email correspondence attached as **Composite Exhibit M**. MSGC's documents also evidence that Plaintiff's salary was $65,000.00, almost double the amount testified to by Plaintiff. *Id.*

13.     On March 27, 2020, Defendant deposed MSGC's corporate representative (and also one of Plaintiff's former supervisors), Pavel Arutyunov ("Arutyunov"). *See* transcript of the March 27, 2020 deposition of Pavel Arutyunov ["Arutyunov Depo"], attached as **Exhibit N**. Arutyunov authenticated MSGC's records and confirmed, as indicated therein, that Plaintiff resigned. *Id.* at p. 11, l. 4-p. 12, l. 10, p. 24, l. 15-p. 26, l. 4, p. 32, l. 5-p. 33, l. 7. In fact, Arutyunov testified that he was one of the individuals referenced in the Employee Change/Termination Form who was in the room when Plaintiff walked in and resigned. *Id.* at p. 24, l. 15-p. 25, l. 6. Arutyunov testified that he saw Plaintiff's resignation coming as Plaintiff appeared to be stressed out and unhappy during his brief employment with MSGC and even commented multiple times that he did not think that the job was for him. *Id.* at p. 19, l. 23-p. 21 l. 22.

14.     In light of MSGC's document production and Arutyunov's testimony, it is clear that Plaintiff committed perjury when testifying about his alleged damages. Unabashedly, in interrogatory answers served after Arutyunov's deposition Plaintiff continues to falsely maintain that he was laid off from his employment with MSGC, even going so far as to claim that he filed an unemployment claim as a result of that termination. *See* Plaintiff's April 6, 2020 Answers and Objections to Defendant VMSB, LLC's Third Set of Interrogatories, attached as **Exhibit O**, Interrogatory No. 2. However, the only unemployment claim records produced by Plaintiff pertain to the termination of his employment with Defendant, not MSGC. Those records clearly do not exist; not surprisingly, Plaintiff has been unable to locate those fictitious documents. *See* May 13-14, 2020 email correspondence, attached as **Exhibit P**.

██████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

███████████████████████████████████████████████████████████

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131



16.

### III.    MEMORANDUM OF LAW

#### A.    The Court's Inherent Authority to Issue Sanctions

In addition to pursuant to the Federal Rules of Civil Procedure and the federal statutory scheme, a court may issue sanctions pursuant to its "inherent power to regulate litigation . . . for abusive practices.'" *Doe v. City of Miami Gardens*, 2019 U.S. Dist. LEXIS 48147, *8 (S.D. Fla. 2019) (quoting *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, 2016 U.S. Dist. LEXIS 186120, *4 (S.D. Fla. 2016).   In doing so, "[a] court must fashion a sanction that not only punishes the wrongdoer but also deters future misconduct;" its "arsenal of sanctions include a dismissal of the case and the assessment of attorney's fees." *Belak v. Am. Eagle, Inc.*, 2001 U.S. Dist. LEXIS 2742, *15 (S.D. Fla. 2001); *see also Cableview Communs. of Jacksonville, Inc. v. Time Warner Cable Southeast, LLC*, 2016 U.S. Dist. LEXIS 3551, *45-46 (M.D. Fla. 2016) ("A federal court has the inherent power to impose sanctions, including the outright dismissal of a lawsuit, for conduct which abuses the judicial process.").

The "ultimate sanction" of dismissal "rest[s] upon the conviction that no lesser sanction will prevent the offending litigant from continuing to lie or distort the truth so pervasively that it 'prevents the opposing party from fairly presenting his case or defense.'" *Qantum Communs. Corp. v. Star Broad, Inc.*, 473 F.Supp.2d 1249, 1276 (S.D. Fla. 2007).  Dismissal "addresses not only prejudice suffered by the opposing litigants, but also vindicates the judicial system as a whole,

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

for such misconduct threatens the very integrity of the courts, which otherwise 'cannot command respect if they cannot maintain a level playing field amongst participants.'" *Id.* A court may assess attorneys' fees under its inherent authority where the party has "acted in bad faith, vexatiously, wantonly, or for oppressive reasons." *Chambers v. Nasco*, 501 U.S. 32, 45-46, 111 S. Ct. 2123 (1991) (citing *Alyeska Pipeline Srvc. Co. v. Wilderness Society*, 421 U.S. 240, 258-259, 95 S. Ct. 1612 (1975)). In either case, the underlying conduct or fraud must be proven by clear and convincing evidence. *Doe v. City of Miami Gardens*, 2019 U.S. Dist. LEXIS 48147 at *8-9.

The "'key to unlocking the court's inherent power' to impose sanctions is a finding of bad faith." *Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. 839, 842 (11th Cir. 2009) (quoting *Byrne v. Nezhat*, 261 F.3d 1075, 1123 (11th Cir. 2001)). In determining whether a party engaged in bad faith conduct, the focus is "primarily on the conduct and motive of the party, rather than on the validity of the case." *Rothenberg v. Security Management Co., Inc.*, 736 F.2d 1470, 1472 (11th Cir. 1984). Absent "a 'smoking gun' statement from the plaintiff, i.e., 'I know my claim is frivolous and I am pursuing this claim to harass the defendants,' a district court makes a determination of bad faith by drawing inferences from the conduct before it." *Byrne v. Nezhat*, 261 F.3d at 1125.

Bad faith exists when a party "knowingly or recklessly raises a frivolous argument, or argues a meritorious claim for the purpose of harassing an opponent." *Byrne v. Nezhat*, 261 F.3d at 1121 (quoting *Barnes v. Dalton*, 158 F.3d 1212, 1214 (11th Cir. 1998)); *see also J.G. v. Carnival Corp.*, 2013 U.S. Dist. LEXIS 149494, *11 (S.D. Fla. 2013). To determine whether a claim is frivolous, "a court 'must focus on the question of whether the case is so lacking in arguable merit as to be groundless or without foundation rather than whether the claim was ultimately successful.'" *Id.* (quoting *Sullivan v. Sch. Bd. of Pinellas Cnty.*, 773 F.2d 1182, 1189 (11th Cir. 1985)).

As noted by the Eleventh Circuit in *Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d 1180 (11th Cir. 2006), "'[w]hen it becomes apparent that discoverable evidence will not bear out the claim, the litigant and his attorney have a duty to discontinue their quest,' risking sanctions if they do not." *Id.* at 1216 (quoting *Collins v. Walden*, 834 F.2d 961, 965 (11th Cir. 1987)). Providing an example that is directly applicable to the instant case, the *Amlong* Court further noted that "[w]hen plaintiffs' own witnesses have no knowledge of the facts alleged in the complaint, or,

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

worse still, their testimony actually contradicts those allegations, counsel is on notice that her claim is without plausible legal or factual basis." *Id.* (internal citations omitted).

Bad faith also exists when a party commits a "fraud on the court." *Doe v. City of Miami Gardens*, 2019 U.S. Dist. LEXIS 48147 at *8 (citing *Tarasewicz v. Royal Caribbean Cruises, Ltd.*, 2016 U.S. Dist. LEXIS 186120 at *4). "A party commits 'fraud upon the court' when clear and convincing evidence demonstrates that 'a party has sentiently set in motion some unconscionable scheme calculated to interfere with the judicial system's ability impartially to adjudicate a matter by improperly influencing the trier or unfairly hampering the presentation of the opposing party's claim or defense." *McDowell v. Seaboard Farms*, 1996 U.S. Dist. LEXIS 19558, *6 (M.D. Fla. 1996) (quoting *Vargas v. Peltz*, 901 F.Supp. 1572, 1579 (S.D. Fla. 1995)).

A party's perjury "can be evidence of bad faith if 'there is other evidence in the record indicating that the statement[s] [were] made for a harassing or frivolous purpose." *Byrne v. Nezhat*, 261 F.3d at 1125; *see also Olivas v. A Little Havana Check Cash, Inc.*, 324 Fed. Appx. at 842 ("False statements . . . alone do not warrant a finding of bad faith, but such statements can be evidence of bad faith if there is other evidence in the record indicating that the statements were made for a harassing or frivolous purpose," finding that the evidence did not compel the conclusion that plaintiff made the statements for a "frivolous or harassing purpose" as the defendant conceded that it owed overtime wages to plaintiff). In fact, a court's inherent power to sanction is most often invoked when a party commits perjury or destroys or alters evidence. *Qantum Communs. Corp. v. Star Broad, Inc.*, 473 F.Supp.2d at 1269.

As noted by the Eleventh Circuit, "perjury, regardless of the setting, is a serious offense that results in incalculable harm to the functioning and integrity of the legal system as well as to private individuals." *United States v. Holland,* 22 F.3d 1040, 1047 (11th Cir. 1994); *see also* 18 U.S.C. §1621(1) (false statements made under oath to a tribunal constitute perjury punishable by imprisonment of not more than five years, a fine, or both); 18 U.S.C. §1621(2) (false statements made in a written declaration that the author "subscribes as true" under penalty of perjury punishable by imprisonment of not more than five years, a fine, or both).

Perjury is not a harmless transgression but, rather, an "assault on the cornerstone of our judicial system." *Belak v. Am. Eagle, Inc.*, 2001 U.S. Dist. LEXIS 2742 at *15 (quoting *Tasby v. United States*, 504 F.2d 332, 336 (8th Cir. 1974)); *see also United States v. Sterba*, 22 F.Supp.2d 1333, 1343 n.6 (M.D. Fla. 1998) ("[A] court is empowered to punish untruthfulness because

GORDON REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900, Miami, FL 33131

citizens, especially the court's officers, owe the court an unwavering, solemn, and indelegable duty of truthfulness, including the qualities of honor, candor, and forthcoming disclosure."); *McDowell v. Seaboard Farms*, 1996 U.S. Dist. LEXIS 19558 at *23-24  ("[E]vidence of perjury by Plaintiff during his depositions and during the hearing reinforce the Court's conclusion that Plaintiff holds in total disregard the integrity of the judicial system.").

As noted by the United States District Court for the Southern District of Georgia in *Chemtall, Inc. v. Citi-Chem, Inc.*, 992 F.Supp. 1390 (S.D. Ga. 1998), "[t]hose who lie, evade and fail to tell the whole truth obviously enjoy an advantage over honest litigants.  The victimized opponent winds up . . . consuming substantial resources to respond to and 'undo' the victimizer's lies and distortions."  *Id.* at 1409.  Notably, the *Chemtall* Court rejected the defendant's assertion that the plaintiffs could simply use his perjured testimony to impeach him at trial, admonishing the defendant: "[s]o in other words, one is free to lie under oath so long as one's opponent can otherwise unearth the truth and later use it to score impeachment points at trial.  Suffice it to say that [defendant's] arguments reinforce the Court's finding that 'lesser sanctions will not adequately deter and punish [his] misconduct.'"  *Id.* at 1410.

Not surprisingly, perjury has often been the basis for sanctions pursuant to a court's inherent authority, including dismissals with prejudice and default judgments.  *See Barash v. Kates,* 585 F.Supp.2d 1347, 1366 (S.D. Fla. 2006) (granting motion for sanctions against plaintiff based upon plaintiff's perjury and record evidence from which the court inferred that plaintiff "knew the claim was unsupported and sought to use perjured testimony to turn a deficient claim into a vehicle to harass [the defendant]."); *see also Vargas v. Peltz*, 901 F.Supp at 1582 (finding that plaintiff's perjury "obstructed justice and frustrated [defendant's] ability to conduct critical discovery and to defend itself against [p]laintiff's allegations."); *TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d 915, 917 (9th Cir. 1987) (upholding striking of defendant's answer and entry of default judgment against defendant as a sanction for defendant's perjury in depositions, finding that the perjury "was part of his elaborate scheme to prevail at trial."); *Nichols v. Klein Tools, Inc.*, 949 F.2d 1047 (8th  Cir. 1991) (upholding dismissal of the case based upon plaintiff's perjury on "the pivotal issue in th[e] case" as a fraud on the court); *Archibeque v. Atchison, Topeka and Santa Fe Railway Co*., 70 F.3d 1172, 1174 (10th Cir. 1995) (upholding dismissal of case as a sanction for plaintiff's perjured testimony and intentional concealment of her medical history); *In re AMTRAK "Sunset Ltd." Train Crash*, 136 F.Supp.2d 1251, 1270 (S.D. Ala. 2001) ("[A] party's infusion of

perjury into the pretrial proceedings in an effort to gain an advantage over his opponent is recognized by the courts as a fraud on the court warranting the dismissal of a plaintiff's case or the entry of a default judgment against a defendant.]," upholding the dismissal of plaintiff's case as a result of his perjury in answers to interrogatories).

**B.**     **Dismissal Pursuant to Rule 41(b) of the Federal Rules of Civil Procedure**

In addition to a court's inherent power to sanction litigants, courts have also found dismissal for fraudulent litigation practices appropriate pursuant to Rule 41(b) of the Federal Rules of Civil Procedure, which provides that "[i]f the plaintiff fails to prosecute or to comply with these rules or a court order, a defendant may move to dismiss the action or any claim against it." Fed. R. Civ. P. 41(b); *see also McDowell v. Seaboard Farms*, 1996 U.S. Dist. LEXIS 19558 at *5; *Pope v. Federal Express Corp.*, 138 F.R.D. 675, 682 (W.D. Mo. 1990) ("[D]ishonest conduct by a party has been recognized as grounds for dismissal with prejudice under Rule 41(b).").

The Eleventh Circuit utilizes a two-part test for determining when an action should be dismissed as a sanction under Rule 41(b): "[t]here must be both [1] a clear record of willful conduct and [2] a finding that lesser sanctions are inadequate." *Zocaras v. Castro*, 465 F.3d 479, 483 (11th Cir. 2006) (citing *Betty K Agencies, Ltd. v. M/V MONADA*, 432 F.3d 1333, 1339 (11th Cir. 2006)).

As it is under a court's inherent authority to sanction, dismissal of an action based upon a plaintiff's perjury is proper under Rule 41(b). *See Aguilar v. United Floor Crew, Inc.*, 2015 U.S. Dist. LEXIS 66478, *13 (S.D. Fla. 2015) (dismissing plaintiff's case with prejudice under Rule 41(b), finding that "[p]laintiff's misconduct falls squarely within the behavior justifying dismissal with prejudice under Rule 41(b)—deliberate and repeated obstruction of the discovery process, including concealment of evidence, providing misinformation and perjury, ultimately resulting in substantial and unjustified delay."); *see also Smith v. Cessna Aircraft Co.*, 124 F.R.D. 103, 109 (D. Md. 1989) (finding that plaintiff's perjury concerning his income warranted dismissal of damages claims for lost income under Rule 41(b)).

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

C.   **Plaintiff's Unrelenting Pattern of Bad Faith Warrants Sanctions**.

The evidence of Plaintiff's bad faith conduct in this case is legion, warranting the "ultimate sanction."

1.   Plaintiff's Claim is Demonstrably Frivolous and is Propped Up Only By His
     Perjury.

As detailed above, there is voluminous evidence establishing that Plaintiff's claim – that he was terminated by Defendant for complaining about the Alleged Policy[1] – is clearly frivolous. The Time Records and Edit Records unequivocally establish that the Alleged Policy did not exist; those records are replete with instances in which a kitchen staff employee: 1) either clocked out for a meal break or did not take a meal break; and 2) did <u>not</u> receive a deduction for a meal break.[2] *See* Time Records at VMSB-000153, VMSB-000156, VMSB-000159, VMSB-000160, VMSB-000162, VMSB-000168, VMSB-000172, VMSB-000174, VMSB-000183, VMSB-000185, VMSB-000186, VMSB-000188-VMSB-000190, VMSB-000193, VMSB-000196, VMSB-000201, VMSB-000237, VMSB-000244, VMSB-000250, VMSB-000254-VMSB-000256, VMSB-000258, VMSB-000262, VMSB-000263, VMSB-000278, VMSB-000280, VMSB-000281, VMSB-000283, VMSB-000285, VMSB-000286, VMSB-000290, VMSB-000291, VMSB-000294, VMSB-000299, VMSB-000302-VMSB-000304, VMSB-000306, VMSB-000307, VMSB-000311.

This evidence directly contradicts Plaintiff's false testimony that a deduction for a meal break was required even if the employee clocked out for the break or did not take the break.  In an effort to further his baseless claim, Plaintiff falsely testified that if a kitchen staff employee did not clock out for a break then they did not take a break. *See* Plaintiff Depo at p. 120, ll. 14-19, p. 120, l. 23-p .121, l. 5, p. 121, ll. 13-18, p. 129, l. 24-p. 130, l. 11, p. 187, ll. 13-18, p. 191, l. 25-p .192,

---

[1] During his deposition, Plaintiff confirmed that the Alleged Policy is the only claimed FLSA violation that he is alleging.  *See* Plaintiff Depo at p. 111, l. 14-p. 112, l. 9.

[2] During Plaintiff's deposition, Defendant confronted Plaintiff with the Time Records, pointing out the numerous instances of kitchen staff employees not receiving a deduction for a meal break. The only response that Plaintiff could muster was to claim that the Time Records may not be the finalized time records and were somehow edited to obscure the alleged unlawful meal break deductions, although the evidence is clear that neither of those contentions have any merit. *Id.* at p. 201, ll. 15-18, p. 203, ll. 9-17, p. 209, l. 2-p. 211, l. 20.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

l. 3, p. 193, l. 23-p. 194, l. 11.  That clearly was not the case, as established by the Time Records, the Edit Records, and the deposition testimony of all other witnesses who were deposed, including two witnesses (Brown and Garcia) who Plaintiff claims would have knowledge about the Alleged Policy.

Plaintiff also brazenly testified that he never applied meal break deductions to kitchen staffs' time, fraudulently testifying that he "eliminated" those deductions and that any such deductions applied while he was conducting payroll (from November 2018 through his termination) were applied not by him but by Copeland.  *Id.* at p. 126, l. 25-p. 127, l. 6, p. 135, ll. 11-12, p. 139, l. 14-p. 140, l. 2, p. 141, ll. 2-8, p. 141, l. 18-p. 142, l. 1, p. 187, ll. 13-18. As evidenced by the attached Edit Records, Plaintiff himself regularly applied meal break deductions during the time that he conducted payroll.  *See* Edit Records; *see also* Lopez Depo at p. 70, l. 24-p. 72, l. 4, p. 72, ll. 18-23.  Plaintiff's deposition testimony to the contrary is clearly false.

Plaintiff's claim that Copeland mandated improper meal break deductions is also a complete fantasy.  As evidenced by the Edit Records, during the time that Copeland conducted payroll he personally: 1) refrained from applying a meal break deduction when informed at the outset that the employee had not taken a meal break during the subject shift; and 2) removed incorrect meal break deductions upon being advised that the kitchen staff employee had not taken a meal break during the subject shift.  *See* Time Records at VMSB-000237, VMSB-000256, VMSB-000281, VMSB-000299; *see also* Edit Records at VMSB-000333, VMSB-000335, VMSB-000365, VMSB-000384, VMSB-000388, VMSB-000395; Lopez Depo at p. 69, l. 20-p. 70, l. 23.

So too is Plaintiff's claim that he was terminated in retaliation for complaining about the Alleged Policy. First, two days after he was terminated Plaintiff sent Mounayyer threatening emails acknowledging that, prior to that date, he "[h]a[d]n't even brought up the [allegation] that [Defendant] take[s] time out of employees['] time cards," which Plaintiff, during his deposition, admitted was a reference to the Alleged Policy.  *See* Post-Termination Threats at VMSB-000084; *see also* Plaintiff Depo at p. 237, l. 13-p .238, l. 1.[3] Moreover, Mounayyer and Copeland testified

---

[3] During his deposition, Plaintiff claimed that what he meant by that statement was that he had not yet brought that issue up within that email correspondence; however, when pressed as to that nonsensical response, Plaintiff attempted to explain that statement away by stating that they were "empty words." *Id.* at p. 239, l. 4-p. 241, l. 14, p. 243, ll. 7-17.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

ad nauseam about Plaintiff's performance issues and that, as a result, Defendant had been looking to replace Plaintiff for years.  *See* Mounayyer Depo at p. 46, ll. 5-25, p. 47, ll. 8-12, p. 57, l. 4-p. 58, l. 1, p. 62, l. 7-p. 63, l. 20, p. 83, ll. 2-10, p. 84, l. 9-p. 85, l. 14; *see also* Copeland Depo at p. 13, l. 21-p. 14, l. 24, p. 17, l. 16-p. 18, l. 9, p. 24, ll. 1-17, p. 34, l. 23-p. 35, l. 1, p. 35, ll. 7-22, p. 61, l. 18-p. 62, l. 14.  In fact, Defendant has produced documents evidencing its efforts to replace Plaintiff.  *See* Headhunter Emails.

Notably, when making an unemployment claim with the Florida Department of Economic Opportunity ("FDEO") following the termination of his employment with Defendant, Plaintiff represented to the FDEO that: 1) the "final incident" that caused him to be discharged was "[I] ask for a raise;" and 2) the reason he left was "BECAUSE OF MONEY."  *See* FDEO questionnaire, bates stamped PL000408-PL-000412, attached as **Exhibit S**.  There was no reference to any alleged retaliation or FLSA violations by Defendant.

In light of the foregoing evidence, Plaintiff's bad faith is clear.  In this case (unlike in many cases), the Court actually has a "smoking gun" statement from Plaintiff that his claim is frivolous, i.e. the Post-Termination Threats.  *See Byrne v. Nezhat*, 261 F.3d at 1125.  Even without those Threats, the Court can certainly determine that Plaintiff has engaged in bad faith by pursuing a frivolous claim by drawing inferences from the clear and convincing evidence establishing that the Alleged Policy did not exist, that no kitchen staff complained about that alleged Policy, and that, thus, Plaintiff committed perjury when testifying in attempted support of those allegations.  *Id.*; *see also Doe v. City of Miami Gardens*, 2019 U.S. Dist. LEXIS 48147 at *8-9.

2.     Plaintiff Further Perjured Himself When Testifying Regarding His Claimed Damages.

Plaintiff's perjury did not stop with the Alleged Policy.   Plaintiff added insult to injury or, in this case, injury to insult, further perjuring himself in an attempt to inflate his baseless lost wages and emotional distress claims.

Plaintiff is claiming lost wages against Defendant from the date of his termination through the present, less any wages that Plaintiff has earned during that time period.  [D.E. #1, p. 3].  During his deposition, Plaintiff testified that he obtained employment with MSGC approximately three months after the termination of his employment with Defendant.  *See* Plaintiff Depo at p. 283, l. 22-p. 284, l. 8. Plaintiff further testified, in pertinent part, as follows:

14

Q:      Okay. What was your rate of pay there?

A:      $38,000 a year.

Q:      Okay. How long – when you did you start? When did you end?

. . .

A:      March to April, sorry.

. . .

Q:      So you're there, what, three weeks?

A:      Yes, and then they laid me off.  They laid four people off. And since I was the new hire, they laid me off.

*Id.* at p. 284, l. 2-p. 285, l. 6.  These were more lies.

Subsequent to Plaintiff's deposition, MSGC produced Plaintiff's personnel file. That file contains an "Employee Change/Termination Form," which indicates that Plaintiff's employment was voluntarily terminated on May 1, 2019 as Plaintiff "[w]alked [o]ut."  *See* "Employee Change/Termination Form" attached as Composite Exhibit M.  In internal email correspondence a couple of weeks after Plaintiff's resignation, Teresa Nunez-Aponte, MSGC's Controller & Director of Membership, stated that "[o]n May 1, 2019 [Plaintiff] walked out. He walked in to his supervisor[']s office and said this is [not] for me, thank you for the opportunity[.] I'm out and good luck." *See* May 16, 2019 email correspondence attached as Composite Exhibit M.

During his deposition, Arutyunov, MSGC's Food & Beverage Director and one of Plaintiff's former supervisors, confirmed that Plaintiff did, in fact, resign.  *See* Arutyunov Depo at p. 7, ll. 5-6, p. 24, l. 15-p. 26, l. 4.  More particularly, Arutyunov testified:

> We were having a little meeting in the catering office with myself, a catering manager and, and executive chef and Thomas walked in, into the office and said, guys, this is not for me, I'm out.  And I think he was referring to Chef Emilio, said, good luck to you, and he just left.

*Id.* at p. 25, ll. 1-6.

Arutunov testified that it seemed to him that Plaintiff was not happy working at MSGC, noting that Plaintiff had previously remarked that "he d[id]n't feel that this [wa]s for him." *Id.* at p. 19, l. 23-p. 21, l. 22.  Although Plaintiff made clear his dissatisfaction with working at MSGC, MSGC had no intention of looking for a replacement as MSGC is extremely busy during that time of year (May and June) and, thus, "we were kind of desperate, actually, for, for people in the

kitchen." *Id.* at p. 22, ll. 14-15.  Moreover, as "hiring a restaurant chef, it's, it's a process," "there was really no time to find a replacement. What we decided to do is the money that we, you know, would be paying to a restaurant chef, let's just throw that money towards the hourly workers over staff and just try to get through the season." *Id.* at p. 27, ll. 12-18.

Plaintiff's personnel file also contains a "New Employee Packet" form indicating that Plaintiff's salary was $65,000.00, nearly double the amount claimed by Plaintiff.  *See* Paychex® New Employee Packet form, attached as **Exhibit T**.  During his deposition, Arutyunov confirmed that Plaintiff's salary at MSGC was $65,000.00 and that Plaintiff's testimony to the contrary was yet another **lie**. *See* Arutyunov Depo at p. 16, l. 13-p. 18, l. 10, p. 31, ll. 11-13.

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

[REDACTED]

3.    Plaintiff's Bad Faith Conduct Warrants Sanctions, Including a Dismissal With <u>Prejudice</u>.

The clear and convincing evidence establishing that Plaintiff's claim is frivolous and is being propped up only by his extensive perjury regarding the Alleged Policy, the claimed complaints about that Policy, and his claimed damages warrants the "ultimate sanction" of dismissal under both the Court's inherent power to sanction as well as Rule 41(b) of the Federal Rules of Civil Procedure.  Unfortunately, it is quite clear that "no lesser sanction will prevent [Plaintiff] from continuing to lie or distort the truth . . . ."  *See Qantum Communs. Corp. v. Star Broad, Inc.*, 473 F.Supp.2d at 1276; *see also Zocaras v. Castro*, 465 F.3d at 483 (dismissal under Rule 41(b) requires, in pertinent part, "a finding that lesser sanctions are inadequate.").

First, despite the voluminous evidence indisputably establishing that the Alleged Policy did not exist and the testimony of witnesses (who he claimed would support his claim) directly contradicting that claim, Plaintiff continues to pursue his baseless claim.  It is quite clear that Plaintiff's claim is "so lacking in arguable merit" and that, as discovery has been completed, "discoverable evidence will not bear out the claim . . . ."  *See J.G. v. Carnival Corp.*, 2013 U.S. Dist. LEXIS 149494 at *11; *see also Amlong & Amlong, P.A. v. Denny's, Inc.*, 457 F.3d at 1216.

In addition, and despite the clear and convincing evidence that he resigned from his employment with MSGC, Plaintiff continues to attempt to distort the truth by maintaining that he was laid off.  *See* Plaintiff's April 6, 2020 Answers and Objections to Defendant VMSB, LLC's

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131

Third Set of Interrogatories, Interrogatory No. 2.  Plaintiff even goes so far as to claim that he filed an unemployment claim due to that alleged lay off, although he has conceded that he cannot locate any documents pertaining to that alleged unemployment claim.  *Id.*; *see also* May 13-14, 2020 email correspondence attached as Exhibit P.

So pervasive was Plaintiff's untruthfulness during his deposition that he even claimed that he had never seen (and had not prepared) his résumé as maintained in his personnel file with Defendant (in conjunction with denying any knowledge of two of the employers (Olympia Prime Restaurant and Gourmet Perfect) listed thereon.  *See* Plaintiff Depo at p. 92, l. 20-p. 94, l. 13.  That testimony was clearly false, as MSGC's personnel file for Plaintiff contains an updated version of that same résumé (reflecting his employment with Defendant and other updated information).  *See* résumé, bates stamped MIA/SHORES/GOLF-000005, attached as **Exhibit U**.

In fact, courts have entered dismissals as sanctions under their inherent authority to sanction and/or Rule 41(b) based upon similar bad faith conduct.  *See Vargas v. Peltz*, 901 F.Supp at 1582 (finding that plaintiff's perjury "obstructed justice and frustrated [defendant's] ability to conduct critical discovery and to defend itself against [p]laintiff's allegations."); *see also TeleVideo Systems, Inc. v. Heidenthal*, 826 F.2d at 917; *Nichols v. Klein Tools, Inc.*, 949 F.2d at 1048-49; *Archibeque v. Atchison, Topeka and Santa Fe Railway Co.*, 70 F.3d at 1174; *In re AMTRAK "Sunset Ltd." Train Crash*, 136 F.Supp.2d at 1270; *Aguilar v. United Floor Crew, Inc.*, 2015 U.S. Dist. LEXIS 66478 at *13.

Plaintiff's bad faith and vexatious conduct also justify an award of attorneys' fees to Defendant.  *See Chambers v. Nasco*, 501 U.S. at 45-46.

## CONCLUSION

From the outset, Plaintiff has made a mockery of these proceedings, lying all along the way and forcing Defendant to incur attorneys' fees for almost a year to defend itself against Plaintiff's undeniably baseless claim.  Throughout, Defendant has submitted documents (evidence and witness testimony) irrefutably establishing that Plaintiff's claim is imagined, yet he has persisted in wasting this Court's resources.  Plaintiff has also attempted to stymie Defendant's efforts to defend itself by perjuring himself at nearly every turn during his deposition.  This Court should not tolerant Plaintiff's bad faith conduct, including his **constant lies**, any further.

Accordingly, the Court should dismiss Plaintiff's claim with prejudice, pursuant to its inherent authority to issue sanctions and Rule 41(b) of the Federal Rules of Civil Procedure, and award Defendant attorneys' fees.

**WHEREFORE**, Defendant, VMSB, LLC, respectfully requests that the Court issue an Order sanctioning Plaintiff, including dismissing this action with prejudice and awarding Defendant attorneys' fees, as a result of Plaintiff's bad faith conduct, including his repeated perjury during his deposition in pursuit of his baseless claim, together with such other and further relief as the Court deems just and proper.

Respectfully submitted this 27th day of May, 2020.

*s/ Eric R. Thompson*
Robin Taylor Symons, Esq.
Florida Bar No. 356832
rsymons@gordonrees.com
Eric R. Thompson, Esq.
Florida Bar No. 888931
ethompson@gordonrees.com
GORDON & REES SCULLY MANSUKHANI
100 SE Second Street, Suite 3900
Miami, Florida 33131
Telephone:  305-428-5320
Facsimile:  877-644-6209
*Counsel for VMSB, LLC*

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that on May 27, 2020 I electronically filed the foregoing with the Clerk of Court by using the CM/ECF system which will send a notice of electronic filing to the attorneys identified on the following Service List.

<u>  *s/ Eric R. Thompson*            </u>
Eric R. Thompson

<u>**Service List**</u>
R. Martin Saenz, Esq.
msaenz@saenzanderson.com
Yadhira Ramírez-Toro, Esq.
yramirez@saenzanderson.com
Saenz & Anderson, PLLC
20900 NE 30th Avenue, Suite 800
Aventura, FL 33180
***Attorneys for Plaintiff***

20

**GORDON REES SCULLY MANSUKHANI**
100 SE Second Street, Suite 3900, Miami, FL 33131